No. 89,228

In the Matter of STANLEY L. WILES, *Respondent.*

(58 P.3d 711)

Opinion filed December 6, 2002.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Jerry R. Palmer,* of Palmer, Leatherman & White, L.L.P., of Topeka, argued the cause for respondent, and *Stanley L. Wiles,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against Stanley L. Wiles of Kansas City, Missouri, an attorney who has been admitted to the practice of law in Kansas. The hearing panel concluded that respondent had violated Kansas Rules of Professional Conduct (KRPC) 1.3 (diligence) (2001 Kan. Ct. R. Annot. 323), 1.4 (communication) (2001 Kan. Ct. R. Annot. 334), 1.5 (fees) (2001 Kan. Ct. R. Annot. 345), and 1.15 (safekeeping property) (2001 Kan. Ct. R. Annot. 376). The hearing panel also concluded that respondent had violated KRPC 1.1 (competence) (2001 Kan. Ct. R. Annot. 312), citing *State v. Caenen,* 235 Kan. 451, 681 P.2d 639 (1984). The panel recommended published censure. We adopt and impose the panel's recommendation.

On May 16, 2002, the hearing panel met and deliberated on the issues in this case. Prior to the hearing, pursuant to a written stipulation entered into by respondent and his counsel, Jerry R. Palmer, respondent agreed to waive his right to a hearing on this matter.

The hearing panel made the following findings of fact and conclusions of law:

"1. Stanley L. Wiles (hereinafter 'the Respondent') is an attorney [practicing in Kansas] . . . . The Respondent's last registration address with the Clerk of the Appellate Courts of Kansas is . . . Kansas City, Missouri . . . .

"2. In January 1996, Lindy S. Painter sustained injuries to her back when the elevator that she was riding in, at the University of Kansas Medical Center, fell

several floors. Ms. Painter retained an attorney to file suit against the University of Kansas Medical Center, the Kansas State Board of Regents, and Montgomery-Kone, Inc. (Montgomery-Kone, Inc., was the company that installed and maintained the elevator.)

"3. On September 9, 1998, Ms. Painter's lawsuit was dismissed without prejudice.

"4. Thereafter, on February 24, 1999, Ms. Painter retained the Respondent to refile the lawsuit. Ms. painter and the Respondent entered into a contingency fee agreement. The agreement provided as follows:

'For such professional services rendered, I also hereby agree to pay said Stanley L. Wiles 45% of the gross amount recovered on my behalf on this claim, 45% if my case goes to trial.'

The agreement did not advise Ms. Painter of her right to have the fee reviewed by the District Court. Additionally, the agreement did not properly state that expenses were to be deducted before the settlement was divided between the Respondent and Ms. Painter.

"5. On March 5, 1999, the Respondent refiled Ms. Painter's lawsuit against the University of Kansas Medical Center, the Kansas State Board of Regents, and Montgomery-Kone, Inc., in Wyandotte County District Court case number 99-C-1033.

"6. On July 20, 1999, the University of Kansas Medical Center and the Kansas State Board of Regents filed a motion to dismiss the lawsuit. Thereafter, on January 19, 2000, the court granted the motion and dismissed Ms. Painter's case as against the University of Kansas Medical Center and the Kansas State Board of Regents. In its journal entry, the court found the following facts to be true:

. . . .

'3. Plaintiff re-filed the current case on March 5, 1999.

'4. Plaintiff sent a letter on May 21, 1999, to the State Attorney General, Carla Stovall, stating "I am [sending] you a copy of the Petition for Damages and Praecipe on this case." Plaintiff's counsel sent the letter by certified mail. The contents of the letter did not include either the court where the petition had been filed or a case number.

'5. The moving defendants admit that they received the above letter but deny that the petition or any other documents were attached to it.

'6. Plaintiff's counsel sent another letter to the office of the State Attorney General, Carla Stovall, dated June 30, 1999. In that letter he stated:

"According to your attorney when I served you by certified mail on May 21, 1999, I did not serve you with the Petition and Summons on this case. I am now serving you the Summons and Petition on this case."

Again the face of the letter did not mention the court in which the petition was filed or a case number.

'7. Plaintiff's counsel has never filed a return of service.'

In addition, the court concluded as follows:

'A. The filing of the first case on January 23, 1997, occurred prior to the running of the applicable statute of limitations.

'B. Even though the statute of limitations had expired prior to dismissal of the first case, plaintiff had 6 months from the date of the dismissal in which to re-file the case (or until April 9, 1999) pursuant to K.S.A. 60-518.

'C. Plaintiff filed the petition in the current case on March 5, 1999, within 6 months of the dismissal of her first case.

'D. Pursuant to K.S.A. 60-203(a) the filing of the current Petition on March 5, 1999, would not constitute a tolling of the statute of limitations unless service was obtained within 90 days of the filing of the petition (or within 120 days if the court had granted an extension of this time period for an additional 30 days).

'E. Plaintiff's letter to the Kansas Attorney General dated May 21, 1999, did not constitute service of process as required in K.S.A. 60-303(b). . . .

'F. Any purported service of process by plaintiff on defendants by virtue of the letter of June 30, 1999, was beyond the 90-day period within which service had to be accomplished in order for this action to be deemed filed on the date of the filing of the petition. Since plaintiff's counsel never requested that this 90-day period be extended, the matter was not "commenced" until defendants received the letter of June 30th with enclosures at the very earliest. This clearly was more than six months after the dismissal of the first case.

'G. K.S.A. 60-204 provides that in certain circumstances a party's substantial compliance with the requirements of service of process can be valid service if the party served was:

"made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected."

Here, plaintiff's counsel did not substantially comply with the requirements for service of process since he never forwarded a summons to the defendants nor can he provide proof that he sent them a copy of the petition prior to the running of the statute of limitations. The letter of May 21, 1999, by itself does not adequately notify defendants of litigation against them such that it can be deemed "substantial compliance." '

"7. The Respondent informed Ms. Painter that the case had been dismissed as against the University of Kansas Medical Center and the Kansas State Board of Regents. However, the Respondent failed to inform Ms. Painter that the claims against the University of Kansas Medical Center and the Kansas State Board of Regents were dismissed because he failed to achieve timely service of process.

"8. On August 17, 2001, Montgomery-Kone, Inc., offered to settle the pending claim against it for $5,000.00. Ms. Painter accepted the offer, and on August 26, 2001, a journal entry of judgment was entered against Montgomery-Kone, Inc., in the amount of $5,000.00.

"9. On October 4, 2001, the court directed the Clerk of the District Court pay to the Respondent a judgment amount of $5,066.50. The Clerk issued a check, made payable to Ms. Painter and the Respondent. The Respondent deposited the

check into his law office operating account at the Bank of America. At the time of the settlement, the Respondent did not have a trust account and was of the opinion that because he was a personal injury attorney, he did not need to have a trust account. However, the Respondent now understands that he needs to deposit the settlement checks into a trust account and then disburse the funds from the trust account. The Respondent now has a trust account.

"10. On October 5, 2001, the Respondent provided Ms. Painter with a settlement statement, setting forth an accounting of the expenses and distribution of the proceeds from the settlement. The Respondent's fee in this case was 40%. The settlement statement did not advise Ms. Painter of her right to have the fee reviewed according to KRPC 1.5(e).

"11. On October 15, 2001, the Respondent provided Ms. Painter with a check drawn on his law office operating account for her share of the settlement proceeds. However, when Ms. Painter attempted to cash the check on October 15, 2001, October 16, 2001, and October 18, 2001, the bank refused to pay the check because there were insufficient funds in the account to cover the check.

"12. On October 22, 2001, the Respondent provided Ms. Painter with a cashier's check for her share of the settlement proceeds. The Respondent explained that the reason Ms. Painter's check was not honored was because he had deposited another check in an unrelated case into his law office operating account but had inadvertently forgotten to endorse that check and, as a result, the unrelated check was returned for his signature, leaving insufficient funds to cover outstanding checks.

"13. By depositing the settlement check into his law office operating account, the Respondent commingled Ms. Painter's funds with his own funds.

## "CONCLUSIONS OF LAW

"1. It is appropriate to consider violations not included in the Formal Complaint under certain circumstances. The law in this regard was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

. . . .

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo*, 390 U.S. 544, [20 L. Ed. 2d 117, 88 S. Ct. 1222] (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

. . . .

' "It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result." '

235 Kan. at 458-59 [quoting *State v. Turner*, 217 Kan. 574, 579-80, 538 P.2d 966 (1975)]. Thus, only when the Formal Complaint alleges facts that would support

findings of additional violations, will considering additional violations be allowed. In this case, the Formal Complaint contains sufficient facts to support a finding that the Respondent violated KRPC 1.1. Thus, in the opinion of the Hearing Panel, the additional violation of KRPC 1.1 should appropriately be considered.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id.* The Respondent failed to provide competent representation when he . . . failed to timely obtain service of process on the defendants in the personal injury case for Ms. Painter. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Ms. Painter when the Respondent failed to timely obtain service of process on the defendants in the personal injury suit. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Painter, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* The Respondent failed to inform Ms. Painter regarding the status of her case and the reason for the dismissal. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. When a lawyer enters into a contingent fee agreement, the agreement:
'shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted before the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the client's share and amount and the method of its determination. The statement shall advise the client of the right to have the fee reviewed as provided in subsection (e).'
KRPC 1.5(d). In this case, the Respondent's contingent fee agreement did not advise Ms. Painter of her right to have the Respondent's fee reviewed pursuant to KRPC 1.5(e). As such, the Hearing Panel concludes that the Respondent violated KRPC 1.5(d).

"6. A lawyer must safeguard the property of his client and a lawyer must also 'hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.' KRPC 1.15(a). Additionally, a lawyer must hold client funds in a 'separate account maintained in the state of Kansas.' *Id.* In this case, the Respondent deposited the settlement proceeds paid by Montgomery-Kone, Inc., into the Respondent's operating account. The Respondent then issued a check to Ms. Painter for her share

of the settlement. However, the bank did not pay the check issued to Ms. Painter because there were insufficient funds in the account to cover the check. Because the Respondent failed to deposit the settlement proceeds into a 'separate' or trust account, and because the Respondent commingled his funds with his client's funds, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a).

## "RECOMMENDATION

· "In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to provide competent and diligent representation to his client. Additionally, the Respondent violated his duty to safeguard his client's property.

"*Mental State*. The Respondent negligently violated his duties.

"*Injury*. As a result of the Respondent's negligence, Ms. Painter lost her cause of action.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has previously been informally admonished on two occasions.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in 1985. At the time he committed the misconduct, the Respondent had been practicing law for fourteen years. Accordingly, the Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Dishonest or Selfish Motive. There is no evidence that the Respondent's misconduct was motivated by dishonesty or selfishness.

"Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. After the check to Ms. Painter was returned because of insufficient funds, the Respondent immediately forwarded certified funds to Ms. Painter.

"The Present and Past Attitude of the Attorney as Shown by his Cooperation and his Full Acknowledgment of the Transgressions. The Respondent fully acknowledged his wrongdoing by stipulating to the facts and violations.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.43. That standard provides that 'Reprimand is

generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.' *Id.* In this case, the Respondent failed to timely obtain service of process on the defendants in the personal injury case and, as a result, Ms. Painter lost her cause of action.

"According to the written stipulation, the Disciplinary Administrator recommends that the Respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports. Also according to the written stipulation, the Respondent does not object to the Disciplinary Administrator's recommendation. As a result, the Hearing Panel unanimously recommends that Respondent be censured by the Kansas Supreme Court. Additionally, the Hearing Panel unanimously recommends that the Kansas Supreme Court publish the censure in the Kansas Reports."

A finding of attorney misconduct requires proof "by clear and convincing evidence." Supreme Court Rule 211(f) (2001 Kan. Ct. R. Annot. 259). The panel's findings of fact are supported by clear and convincing evidence and, with the conclusions of law, are adopted as the findings of this court.

IT IS THEREFORE ORDERED that respondent Stanley L. Wiles be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2001 Kan. Ct. R. Annot. 224) for his violations of the KRPC.

IT IS FURTHER ORDERED that the costs of the proceeding be assessed to the respondent and that this opinion be published in the official Kansas Reports.