IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,332

In the Matter of AMY J. AHRENS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed January 22, 2021. Indefinite suspension.

*Gary C. West*, Deputy Disciplinary Administrator, argued the cause, and *Matt Franzenburg*, Deputy Disciplinary Administrator, and *Stanton A. Hazlett,* Disciplinary Administrator, were on the formal complaint for the petitioner.

*John J. Ambrosio*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, and *Amy J. Ahrens*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Amy J. Ahrens, of Denver, Colorado, an attorney admitted to the practice of law in Kansas in 2012.

On June 19, 2019, the Disciplinary Administrator's office filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent was permitted to file an answer to the complaint out-of-time, which she did on July 17, 2019.

On September 30, 2019, the parties entered into a written stipulation in which the respondent admitted the facts alleged in the formal complaint and admitted that she violated KRPC 8.1(b) (2020 Kan. S. Ct. R. 392) (cooperation); 8.4(d) (2020 Kan. S. Ct.

1

R. 394) (professional misconduct); and Kansas Supreme Court Rule 207(b) (2020 Kan. S. Ct. R. 246) (cooperation).

Respondent personally appeared and was represented by counsel at the complaint hearing before a panel for the Kansas Board for Discipline of Attorneys, which was conducted on November 13, 2019. At the conclusion of the hearing, the panel determined that the respondent violated KRPC 8.l(b) (failure to cooperate with disciplinary authority), KRPC 8.4(c) (dishonest conduct), KRPC 8.4(d) (conduct prejudicial to administration of justice), KRPC 8.4(g) (conduct adversely reflecting on respondent's fitness to practice law), and Kansas Supreme Court Rule 207(b) (cooperation). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report dated December 20, 2019, set forth, in relevant part, below.

"*Findings of Fact*

. . . .

"Law License History

"15.     The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on September 28, 2012. In 2017, the respondent failed to pay the attorney registration fee, failed to comply with the continuing legal education requirements, and failed to pay the non-compliance fees. As a result, on October 31, 2017, the Supreme Court issued an order suspending the respondent's license to practice law. The respondent's license to practice law remains suspended.

"16.    Topeka Police Department Officer Burger observed L.O., the respondent's boyfriend, sell marijuana and cocaine in Topeka, Kansas. On three occasions, Officer Burger observed the respondent accompany L.O. during his trips to Topeka to sell drugs.

a.    On June 16, 2016, the respondent accompanied L.O. to Topeka, Kansas. While in Topeka, L.O. sold one pound of marijuana to a confidential informant (C.I.) for $2,700, from his car. The respondent was in L.O.'s car at the time and witnessed the drug transaction. Unbeknownst to L.O. and the respondent, an audio recording of the transaction was made by the C.I.

b.    On June 28, 2016, L.O. sold another pound of marijuana to the same C.I. L.O. did not conduct this transaction in the respondent's presence. Rather, L.O. got out of his car, entered the C.I.'s car., and sold the drugs while in the C.I.'s car.

c.    On July 7, 2016, the respondent again accompanied L.O. in his vehicle to Topeka, Kansas. During this trip, L.O. sold marijuana and cocaine to the same C. I. Again, L.O. got out of his car and got in the C.I.'s car. L.O. conducted the transaction in the C.I.'s car and the respondent remained in L.O.'s car during the transaction.

"17.    On July 18, 2016, the respondent was a front seat passenger in a vehicle being driven eastbound on 1-70 in Lincoln County, Kansas, by L.O. A trooper with the Kansas Highway Patrol observed L.O.'s vehicle speeding and initiated a traffic stop. During the traffic stop, the trooper questioned the respondent. The respondent told the trooper that she was not aware of any illegal items, including drugs, in the vehicle. The respondent told the trooper that she had smoked marijuana with her family in Colorado prior to heading back to Kansas. During a search of the car, the trooper found 58 grams of marijuana and $22,206 cash. The trooper arrested both L.O. and the respondent.

"18. After being arrested and advised of her rights under *Miranda*, the respondent denied any knowledge of the marijuana and the money. The respondent asserted that she had been asleep during the entire car ride from Colorado until the traffic stop was initiated. The respondent and L.O. were taken to the highway patrol office in Salina. There, L.O. and the respondent were interviewed by Officer Proffitt of the DEA Task Force.

a. The respondent stated that she and L.O. had been dating for a year and a half. The respondent stated that she flew to Colorado to visit family and L.O. drove out several days later. When they were pulled over, they were driving back home to Leavenworth, Kansas. The respondent stated that she did not know about the marijuana and the money in the car. The respondent stated that she smoked marijuana with L.O. and the respondent's cousin while at the respondent's father's house in Colorado. The respondent stated that her cousin brought the marijuana to her father's house. The respondent said she had never seen L.O. with any other drugs.

b. L.O. told Officer Proffitt that the marijuana in the car belonged to him. Initially, L.O. denied that the money in the car was his; rather he said that most of the money in the car belonged to the respondent. Later in the interview, L.O. told the officer that the money belonged to him. Finally, L.O. admitted that he planned to use the money to purchase marijuana because he deals in marijuana. L.O. told the officer that the respondent was aware that he sells marijuana, that the respondent was aware of the money, and the respondent was aware of L.O.'s intended use of the money found in the car. L.O. told the officer that he provides marijuana to the respondent and she does not pay for it. L.O. told the officer that he had smoked marijuana while in Colorado, that he had purchased that marijuana from a dispensary, and that the respondent had not smoked any marijuana in Colorado.

c. After interviewing L.O., Officer Proffitt returned to the respondent. Officer Proffitt told the respondent that L.O. contradicted a number of her

4

statements. The officer asked her if she would like to change any of her answers. The respondent began to cry, but she did not say anything.

"19.   On September 21, 2016, Officer Burger of the Topeka Police Department interviewed the respondent with counsel present. During that interview the respondent told the officer that she was familiar with the smell of marijuana and that she had used marijuana in the past. The respondent denied knowing that L.O. was selling marijuana. When the officer confronted the respondent with evidence that established that she had been present when L.O. sold marijuana, and after the respondent consulted with her attorney outside the presence of the officer, the respondent admitted that in May, 2016, she became aware that L.O. was selling marijuana. The respondent admitted that she accompanied L.O. on drug sales around Topeka, Kansas, and that he sold to approximately five people in Topeka. The respondent denied any knowledge of L.O. selling any drugs other than marijuana. The respondent agreed to assist in the investigation of L.O. and agreed to testify against him, if necessary. During that interview, the respondent admitted that she was dishonest when Officer Proffitt interviewed her that previous July.

"20.   On August 9, 2016, the Lincoln County Attorney charged the respondent with possession of marijuana with intent to distribute, a felony, and possession of drug paraphernalia, a misdemeanor.

"21.   On August 30, 2016, Jennifer R. O'Hare, the Lincoln County Attorney, sent a complaint via facsimile to the disciplinary administrator alleging attorney misconduct against the respondent based on the drug charges.

"22.   On August 31, 2016, the disciplinary administrator sent the respondent a letter, notifying her of Ms. O'Hare's complaint and asking for a response. On August 26, 2016, the respondent sent a letter to the disciplinary administrator self-reporting that she had been charged with criminal offenses. The disciplinary administrator's office received the respondent's self-report letter on September 1, 2016. It appears that the respondent's self-report letter and the disciplinary administrator's letter seeking a response crossed in

the mail. On September 26, 2016, the respondent requested that the disciplinary case be placed on hold until the criminal case was resolved.

"23. Later, after the respondent cooperated with the investigation of L.O., on October 13, 2016, the Lincoln County Attorney dismissed the charges against the respondent. On November 2, 2016, the respondent notified the disciplinary administrator that the criminal case had been dismissed. On January 2, 2017, the respondent provided a detailed account of the events which gave rise to the complaint. In her response, the respondent admitted that she became aware that L.O. was selling marijuana in May, 2016.

"DA13105

"24. In his appeal before the Kansas Court of Appeals, the respondent's client in a criminal case, F.D., accused the respondent of inappropriate conduct during the course of her representation. As a result, on May 21, 2018, the Honorable Kathryn Gardner, Judge with the Kansas Court of Appeals, filed a complaint against the respondent, relating the information asserted by F.D.

"25. The attorney appointed to investigate the complaint sent the respondent a letter and attempted to reach the respondent by phone on at least five occasions. The respondent did not respond to the letter nor did she return the telephone calls.

"26. William Delaney, a special investigator with the disciplinary administrator's office, conducted follow-up investigation. Mr. Delaney also attempted to reach the respondent by phone, but was unsuccessful.

"27. The attorney appointed to investigate the complaint and Mr. Delaney concluded that there was insufficient evidence to substantiate the claims made by F.D. However, throughout the investigation of the complaint filed by Judge Gardner, the respondent failed to cooperate.

6

"28.     On September 30, 2019, the respondent, her counsel, and Mr. Franzenburg entered into a written stipulation. In the stipulation, the parties admitted many facts. Additionally, the respondent admitted that she violated KRPC 8.l(b), KRPC 8.4(d), and Kan. Sup. Ct. R. 207(b).

"*Conclusions of Law*

"29.     In the formal complaint the disciplinary administrator asserted that the respondent violated KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), and Kan. Sup. Ct. R. 207 (cooperation). In the stipulation entered by the parties on September 30, 2019, the parties specified the subsections that the respondent violated:  KRPC 8.l(b) (cooperation), KRPC 8.4(d) (conduct prejudicial to the administration of justice), and Kan. Sup. Ct. R. 207(b) (cooperation).

"30.     After carefully reviewing the facts of this case, it is clear to the hearing panel that it should consider whether the respondent violated additional subsections of KRPC 8.4, specifically whether the respondent violated KRPC 8.4(c) (dishonest conduct) and KRPC 8.4(g) (conduct that adversely reflects on the respondent's fitness to practice law).

"31.     Due process requires that the formal complaint in the disciplinary proceeding 'be sufficiently clear and specific to inform the respondent of the alleged misconduct.' Kan. Sup. Ct. R. 211(b). See *State v. Caenen*, 235 Kan. 451, 458, 681 P.2d 639 (1984). Further, as long as 'the facts in connection with the charge are clearly set out in the complaint,' a respondent has received sufficient notice. *State v. Alvey*, 215 Kan. 460, 464, 524 P.2d 747 (1974). In this case, the disciplinary administrator generally alleged KRPC 8.4 (professional conduct) and included facts which support a conclusion that the respondent violated KRPC 8.4(c) (dishonest conduct) and KRPC 8.4(g) (conduct that adversely reflects on the respondent's fitness to practice law) in the formal complaint. Thus, even though the stipulation of the parties did not include violations of KRPC 8.4(c) (dishonest conduct) and KRPC 8.4(g) (conduct that adversely reflects on the respondent's

7

fitness to practice law), the hearing panel concludes that it is proper to consider those two additional violations.

"32.    As detailed below and based on the respondent's stipulation and the clear and convincing evidence presented, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.l(b) (cooperation), KRPC 8.4(c) (dishonest conduct), KRPC 8.4(d) (conduct prejudicial to the administration of justice), KRPC 8.4(g) (conduct that adversely reflects on the respondent's fitness to practice law), and Kan. Sup. Ct. R. 207(b) (cooperation).

"KRPC 8.4(c)

"33.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when she provided false information to the trooper, Officer Proffitt, and Officer Burger regarding her knowledge and observations of L.O.'s criminal activity. The respondent never corrected her false statements to the trooper or Officer Proffitt. The respondent corrected her false statements to Officer Burger only after she was confronted with evidence of her presence at the drug transactions. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"34.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). When the respondent was dishonest in her dealings with the trooper, Officer Proffitt, and Officer Burger, she directly impeded a criminal investigation. Thus, the respondent engaged in conduct that is prejudicial to the administration of justice when she provided false and misleading statements to the officers. See *In re Mintz*, 298 Kan. 897, 317 P.3d 756 (2014). Based on the respondent's stipulation and the evidence presented, the hearing panel concludes that the respondent violated KRPC 8.4(d).

8

"35.     'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in conduct that adversely reflects on her fitness to practice law when she repeatedly accompanied L.O. when he sold illegal drugs in Topeka, Kansas. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(g).

"KRPC 8.1 and Kan. Sup. Ct. R. 207(b)

"36.     Lawyers must cooperate in disciplinary investigations. KRPC 8.l(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . . ' KRPC 8.l(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The respondent failed to cooperate in the investigation of the complaint filed by Judge Gardner, DA13105, when she failed to respond to the letter and the many telephone calls. Based on the respondent's stipulation and the evidence presented at the hearing, the hearing panel concludes that the respondent failed to cooperate in the disciplinary investigation of DA13105, in violation of KRPC 8.l(b) and Kan. Sup. Ct. R. 207(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"37.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors

9

to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"38. *Duty Violated.* The respondent violated her duty to the public to maintain her personal integrity and she violated her duty to the legal profession to cooperate in a disciplinary investigation.

"39. *Mental State.* The respondent knowingly violated her duties.

"40. *Injury.* As a result of the respondent's misconduct, the respondent caused injury to the legal profession.

"Aggravating and Mitigating Factors

"41. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a. *Dishonest or Selfish Motive.* The respondent's misconduct was motivated by dishonesty and selfishness. The respondent provided false information to three law enforcement officers in an investigation of the sale of illegal drugs. It is important to note that the respondent never provided truthful answers to the trooper or to Officer Proffitt and she provided truthful answers to Officer Burger only after she was confronted with evidence of her dishonesty. The respondent's failure to be honest during the criminal investigation establishes her poor judgment and reflects negatively on her credibility and character. Clearly, the motivation for the misconduct was dishonest and selfish—she did not want to get charged with committing crimes. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty and selfishness.

10

b. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The respondent failed to participate in the investigation of the complaint filed by Judge Gardner, DA13105.

"42.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a. *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

b. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* At the hearing on the formal complaint, the respondent's treatment provider, Karen L. Higginbotham, Psy.D., testified that while the respondent has not been diagnosed with post-traumatic stress disorder, she has a number of the features of that disorder. Dr. Higginbotham testified that the respondent is not currently fit to practice law. Dr. Higginbotham testified that the respondent needs to undergo a period of treatment of 18 months to two years before she would be able to resume the practice of law. The respondent also presented a treatment summary from Dr. Higginbotham. Additionally, Richard F. Grenhart, Psy.D., conducted a psychological evaluation of the respondent. In his report of the evaluation, Dr. Grenhart concluded that the respondent suffers from bi-polar disorder (manic, severe, without psychotic features), adjustment disorder with anxiety, and psychoactive substance abuse. Additionally, Dr. Grenhart asserted that the respondent has depressive personality traits, dependent personality traits, and narcissistic personality features. Later, in the same report, Dr. Grenhart summarized the respondent's mental health struggles as an anxiety disorder with depressive features. While neither the respondent nor Dr. Higginbotham addressed the diagnosis of bi-polar disorder in the testimony, there is sufficient evidence to conclude that the respondent's personal and emotional problems,

11

including her mental health disorders, played a part in the misconduct in this case.

c. *Inexperience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in 2012. While the practice of law was not involved in this case, it is relevant to note that at the time of the misconduct, the respondent had been practicing law for less than four years.

d. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent was previously an active and productive member of the bar of Leavenworth, Kansas. During her period of practice, it appears that the respondent developed a good reputation. . . .

e. *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"43.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

'7 .2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"44.      The disciplinary administrator recommended that the respondent's license to practice law be indefinitely suspended. Counsel for the respondent also recommended that the respondent's license to practice law be indefinitely suspended. Counsel for the respondent further recommended that the effective date of the indefinite suspension be made retroactive to the date of the administrative suspension, October 31, 2017.

"*Recommendation of the Hearing Panel*

"45.      Based upon the stipulation, findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law in Kansas be indefinitely suspended. Given the seriousness of the respondent's misconduct, the hearing panel does not recommend that the effective date of the suspension be made retroactive to the date of the administrative suspension.

"46.      Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2020 Kan. S. Ct. R. 254). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint to which she filed an answer. The respondent was also given adequate notice of the hearing before the panel and the hearing before this court. She did not file exceptions to the hearing panel's final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2020 Kan. S. Ct. R. 258). The evidence also supports the panel's conclusions of law. We, therefore, adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for the respondent's violations. At the hearing before this court, the Disciplinary Administrator's office recommended that the respondent be indefinitely suspended, effective as of the date of the panel hearing, November 13, 2019. The respondent's counsel also recommended indefinite suspension but recommended that it be made retroactive to July 2019.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. Supreme Court Rule 212(f).

We are cognizant of the severity of the respondent's transgressions. She was present during drug deals, used illegal drugs, lied to legal authorities, and ignored administrative authorities. Both parties agree that the punishment for what the respondent did should be suspension of her license to practice law. A majority of this court agrees, though a minority of the court would impose a lesser level of discipline. We believe it is just that serious actions result in serious consequences.

But the respondent also, ultimately, told the truth to legal authorities and cooperated with administrative authorities. She apparently stopped using illegal drugs

14

and stopped hanging out with those who used them and sold them. We know she could have ended there and just said goodbye to the law license she fought so hard to achieve.

The respondent did not give up, though she had to know the way would be difficult. We note her tenacity and observe she has overcome great difficulties. Respondent had suffered teenage abuse from a boyfriend during the same time she watched her mother lose a long battle with cancer. Unfortunately, trauma such as that leads to mental health issues and concerns that last for years. Respondent's problems with loneliness and depression only exacerbated other mental health issues that challenged her personally and in her relationships. Though she was able to excel in her education, and even earned a law degree, her emotional issues and their aftermath continued to plague her. The respondent's legal and license-related issues were not the end of this dark road. She eventually became homeless and lived for a time in her car.

What the respondent did after that was impressive. She got into counseling and worked the plan. For the last year-and-a-half, she has asked for help and received the help offered. She has continued to receive counseling and claims to have remained drug and alcohol free for many months. Respondent has a family and a job of which she is proud. She has done much in her personal and professional life to restore her good health and her good name. Actions speak loudly, especially when they are difficult and take a long time.

Suspension of a law license does not need to signal the end of a legal career. As a court, we want to encourage the respondent to continue her recovery and continue to fight for the law license she worked so hard to obtain. Suspension will be effective as of the date of the panel's final report—December 20, 2019.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Amy J. Ahrens be and is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2020 Kan. S. Ct. R. 234), effective as of December 20, 2019.

IT IS FURTHER ORDERED that the respondent comply with Supreme Court Rule 218 (2020 Kan. S. Ct. R. 265).

IT IS FURTHER ORDERED that when respondent applies for reinstatement, she shall comply with Supreme Court Rule 219 (2020 Kan. S. Ct. R. 266), including undergoing a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

BRUCE BROWN, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Brown was appointed to hear case No. 122,332 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Carol A. Beier.