No. 87,894

In the Matter of GEORGE WILLIAM SWISHER, *Respondent*.

(41 P.3d 847)

Opinion filed March 8, 2002.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Michael C. Hayes*, of Oskaloosa, argued the cause for respondent. George William Swisher, respondent, appeared pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against the respondent, George W. Swisher, of Oskaloosa, an attorney admitted to the practice of law in Kansas, alleging violations of the Kansas Rules of Professional Conduct (KRPC) 1.1 (2001 Kan. Ct. R. Annot. 312) (competence); 1.3 (2001 Kan. Ct. R. Annot 323) (diligence); 1.4 (2001 Kan. Ct. R. Annot. 334) (communication); 1.16(d) (2001 Kan. Ct. R. Annot. 387) (declining or terminating representation); 3.2 (2001 Kan. Ct. R. Annot. 398) (expediting litigation); and 8.4(a), (c), (d), and (g) (2001 Kan. Ct. R. Annot. 437) (misconduct). We impose a 2-year suspension from the practice of law, at the end of which, Swisher must undergo a reinstatement hearing and establish that he has received appropriate professional help to enable him to prevent further misconduct, establish his ability to obtain legal malpractice insurance, and evidence a commitment to the orderly practice of law.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on August 29, 2001. Respondent stipulated to the facts and to the violations of the KRPC as set forth in the complaint. Respondent and the Deputy Disciplinary Administrator stipulated to the admission of exhibits. The panel heard the testimony of Michael Chandler, Sheila Jones, Patrick Nichols, Laurie Martinez, and the respondent.

After hearing the testimony presented and the arguments of the parties, and after reviewing the exhibits admitted into evidence, the panel made the following findings of fact:

"DA 7962: Chandler Case

"2. In July, 1998, Michael Chandler retained the Respondent to recover property that he owned, but that was in the possession of his half-sister. At that time, Mr. Chandler paid the Respondent a retainer of $150.00. The Respondent assured Mr. Chandler that he would file suit in the District Court of Jefferson County, Kansas, in his behalf.

"3. In October, 1998, Mr. Chandler again called the Respondent to get an update on the repossession case. At that time, the Respondent told Mr. Chandler he forgot to file the petition.

"4. In December 1998, Mr. Chandler again called the Respondent to learn the status of the case. At that time, the Respondent told Mr. Chandler he filed the 'wrong' papers in court and that he needed to re-file the case.

"5. In February, 1999, Mr. Chandler called the Respondent to find out the status of the case. The Respondent told Mr. Chandler that the court docket was overloaded and that he should call back in six weeks.

"6. Mr. Chandler next contacted the Respondent in March, 1999. At that time, the Respondent told Mr. Chandler that the judge was on vacation for a month and that the Respondent would call Mr. Chandler when the judge returned from vacation.

"7. When Mr. Chandler did not hear from the Respondent, in May, 1999, Mr. Chandler again called the Respondent. The Respondent informed Mr. Chandler that the judge ruled in Mr. Chandler's favor and that the sheriff was in possession of a garnishment order to serve on Mr. Chandler's half-sister.

"8. Later, Mr. Chandler called to find out the status of the collection effort. At that time, the Respondent told Mr. Chandler that his half-sister hired an attorney, that the garnishment order was 'annulled,' and that the case was scheduled for trial.

"9. On the date the Respondent said that [the] matter was scheduled for trial, Mr. Chandler traveled from his residence in Kansas City, to Oskaloosa for trial. Mr. Chandler did not see his half-sister in the courthouse. The Respondent asked Mr. Chandler to wait in the hallway while he visited with the judge. When the Respondent returned, the Respondent told Mr. Chandler that the judge issued a new garnishment order and that he should have his money in approximately thirty days.

"10. After approximately six weeks passed, Mr. Chandler called the Respondent and was informed that his half-sister's attorney had the garnishment order 'blocked' and that a new hearing was scheduled.

"11. Mr. Chandler repeatedly tried to contact the Respondent by telephone. When Mr. Chandler was unable to contact him, Mr. Chandler drove to the Respondent's office in Oskaloosa. When he arrived at the Respondent's office, he

observed a sign in the door that said that the Respondent was no longer in private practice. Mr. Chandler then went to the Jefferson County Courthouse to find out the status of his case. Someone in the clerk's office informed Mr. Chandler that no petition had been filed, no hearings had been set, and that no garnishment orders had been issued.

"12. Mr. Chandler confronted the Respondent with the information from the clerk's office. The Respondent assured Mr. Chandler that the case had been filed and told Mr. Chandler that the person in the clerk's office was wrong.

"13. The Respondent never filed suit in behalf of Mr. Chandler. The Respondent repeatedly provided Mr. Chandler with false information regarding the representation.

"14. On August 27, 2001, Mr. Chandler received a letter of apology from the Respondent, along with a refund of the $150.00 paid to the Respondent initially.

"DA 7963: Jones Complaint

"15. In 1992, Sheila M. Jones was working at the Peyton Liquor Store. One of her job duties included lifting heavy boxes high in the air. Ms. Jones suffered a work-related injury and began receiving medical attention for the injury.

"16. Thereafter, in early 1993, Ms. Jones engaged the Respondent to represent her in filing a worker's compensation claim. The Respondent prepared a contingency fee contract regarding his representation of Ms. Jones in the worker's compensation matter. However, the contract was never executed.

"17. In May, 1996, Ms. Jones lived in an apartment that she rented from Dr. Paul Rebek, a Topeka dentist. At that time, Ms. Jones' neighbor experienced a clogged pipe. The maintenance man from the management company was able to unclog the neighbor's clogged pipe, but in doing so, caused sewage to backup into Ms. Jones' apartment. Apparently, the sewage came out of the kitchen sink, onto the floor and carpet. The management company examined the damage, accepted responsibility, decided that the carpet needed to be replaced, and agreed to reimburse Dr. Rebek for the expenses of having the carpet replaced. While the carpet was cleaned, it was never replaced.

"18. Thereafter, Ms. Jones became ill. She underwent many examinations. It was not until September, 1997, that Ms. Jones discovered that the sewage caused mold and mildew to grow in the carpet, and that the mold and mildew in the carpet was making her ill. As soon as Ms. Jones realized that it was the carpet that was making her ill, she moved from the apartment.

"19. In June, 1996, and again in January, 1997, an attorney representing the employer and insurance carrier in the worker's compensation case, offered to settle the matter for $10,000.00. However, Ms. Jones had incurred more than $10,000 in medical expenses and, therefore, directed the Respondent to reject the settlement offer.

"20. In August, 1997, the Respondent rejected a second offer to settle the case, this time for $12,000.00. In his letter rejecting the offer, the Respondent wrote,

'I am not sure what my role will be from this point forward. I will contact you if there is any change in that situation.'

"21. In August, 1997, Ms. Jones contacted the Respondent and asked him to file suit in her behalf against Dr. Rebek for the physical injury she suffered when Dr. Rebek failed to replace the carpet after the sewage backup. The Respondent agreed to represent Ms. Jones, again on a contingent fee arrangement. And, again, the Respondent and Ms. Jones did not execute a written fee agreement.

"22. For a period of time, Ms. Jones made repeated attempts to contact the Respondent by telephone. However, the Respondent failed to return her phone calls.

"23. On February 4, 1999, Ms. Jones signed the verified petition to initiate the lawsuit against Dr. Rebek. However, the Respondent failed to file the petition until May 25, 1999. According to the petition, Ms. Jones was seeking in excess of $15,000.

"24. After he filed the petition, the Respondent informed Ms. Jones that he had obtained a judgment in the amount of $75,000 against Dr. Rebek. The Respondent also told Ms. Jones that a garnishment proceeding had been intiated to collect the judgment.

"25. However, the Respondent had not obtained a judgment in behalf of Ms. Jones. The Respondent never obtained service of process on Dr. Rebek.

"26. Then, on November 5, 1999, the Honorable Marla J. Lukert [sic] wrote to the Respondent informing him that Jones v. Rebeck (sic) would be dismissed for failure to obtain service and failure to prosecute unless the Respondent provided an explanation within fifteen days. The Respondent failed to notify Ms. Jones of the judge's letter, and the Respondent failed to respond to the judge's letter. On December 8, 1999, Judge Lukert [sic] dismissed Jones v. Rebeck (sic) for failure to obtain service of process and failure to prosecute.

"27. The Respondent failed to notify Ms. Jones that the lawsuit had been dismissed. Additionally, the Respondent failed to inform Ms. Jones of the statutory provisions regarding refiling cases that had been dismissed for failure to prosecute.

"28. Ms. Jones continued to try to contact the Respondent. Ms. Jones' attempts to contact the Respondent were unsuccessful. On one occasion, Ms. Jones reached a telephone recording which stated that the Respondent was no longer practicing law. After learning that the Respondent was no longer practicing law, Ms. Jones sought new counsel.

"29. In early 2000, Ms. Jones retained Patrick Nichols to represent her in the worker's compensation case as well as the personal injury case.

"30. On April 4, 2000, the Respondent wrote to Ms. Jones providing her with a copy of the petition in Jones v. Rebeck (sic). In his letter, the Respondent stated, 'You should refile as soon as possible to preserve your rights. It still appears that your only hope of prevailing will be to get this considered as a contract issue.' The Respondent failed to inform Ms. Jones that she would not be able to recover for her personal injuries under a contract theory.

"31. Mr. Nichols notified the Respondent by letter that Mr. Nichols had been hired to represent Ms. Jones. Mr. Nichols asked the Respondent to withdraw from the worker's compensation case. The Respondent failed to respond to Mr. Nichols' letter and failed to withdraw from the case.

"32. Mr. Nichols testified that Ms. Jones' recovery in the worker's compensation case will be limited because evidence of causation has been lost due to the passage of time. Mr. Nichols testified that he has had difficulty in getting the physicians to acknowledge that the injury was work-related because the injury was so long ago. In addition, Mr. Nichols testified that Ms. Jones will not recover in the personal injury case, even though liability was fairly clear, because the statute of limitations expired before the Respondent filed the petition. Mr. Nichols suggested that Ms. Jones may have been able to recover between $50,000 to $100,000 in the personal injury case, had the Respondent properly filed the case. Prior to the misconduct in these cases, the Respondent allowed his professional liability insurance to lapse.

"DA 8035: Wilson Complaint

"33. In 1996, Laurie Wilson retained the Respondent to obtain a divorce. Ms. Wilson, and her then-husband, Kevin Wilson, agreed to the division of the personal and real property of the marriage. The Respondent prepared and filed a petition for divorce. In the petition, without providing a description of the real property, the Respondent made a general reference to real property owned by the parties. According to the petition, the real property was to be 'divided.' It was Ms. Wilson's understanding that Mr. Wilson was to remain in the residence. Additionally, it was Ms. Wilson's understanding that, at the time Mr. Wilson sold the property, she was to receive one-half of the proceeds of the sale.

"34. On May 22, 1996, a hearing on the petition for divorce was held. At that time, the Respondent appeared in behalf of Ms. Wilson. Because Mr. Wilson was not represented, the Respondent prepared an entry of appearance and waiver of service for Mr. Wilson. Following the hearing, the Respondent prepared the journal entry of divorce. The journal entry of divorce did not include a disposition of the real property.

"35. Later, Mr. Wilson attempted to sell the property. However, because there had been no disposition of the property included in the journal entry of divorce, it was unclear who was to receive the proceeds from the sale. As a result, the property was not sold.

"36. Ms. Wilson contacted the Respondent to correct the problem. However, Ms. Wilson was unable to contact the Respondent. Eventually, Ms. Wilson and Mr. Wilson each obtained new counsel. The matter was settled by passing the property to the children of Mr. Wilson and Ms. Wilson. Unfortunately, the real estate taxes went unpaid for a couple of years and, at the time the children received the property, they were unable to pay the outstanding taxes."

The panel made the following conclusions of law:

"1.   It is appropriate to consider violations not included in the Formal Complaint under certain circumstances. The law in this regard was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

'Supreme Court Rule 211(b) (232 Kan. clxvi), requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct.

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117, *reh. denied* 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874 (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

'Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses. . . . Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the State is not required to plead specific rules, since it is the factual allegations against which the attorney must defend. . . .   However, if specific rules are pled, the state is thereafter limited to such specific offenses. . . .

'Subsequent to the *Ruffalo* decision, the due process requirements in lawyer disciplinary proceedings have been given exhaustive treatment by this court. In *State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975), 87 A.L.R.3d 337, the court summarized prior Kansas and federal precedent on the question, including *Ruffalo,* and held in accordance with established precedent that the State need not set forth in its complaint the specific disciplinary rules allegedly violated . . ., nor is it required to plead specific allegations of misconduct . . . . What is required was simply stated therein:

" 'We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. . . ."

. . . .

" 'It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result.' "

235 Kan. at 458-59 (citations omitted). Thus, only when the Formal Complaint alleges facts that would support findings of violations of the amendments, will considering additional violations be allowed. In this case, the Formal Complaint contains sufficient facts to support a finding that the Respondent violated KRPC 1.1 in his representation of Ms. Jones. Thus, in the opinion of the Hearing Panel,

it is appropriate to consider whether the Respondent violated KRPC 1.1 in his representation of Ms. Jones.

"2.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id.* The Respondent failed to competently represent Ms. Jones when he failed to file the personal injury case within the statute of limitations. Additionally, the Respondent violated KRPC 1.1, in regard to Ms. Martinez, when he failed to include the disposition of the real estate in the divorce decree.

"3.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to file suit in behalf of Mr. Chandler as promised. Because he failed to take the action that he agreed to take, Mr. Chandler is no closer to recovering his property than he was when he retained the Respondent. After the Respondent filed the personal injury case in behalf of Ms. Jones, the Respondent failed to obtain service of process on Dr. Rebek. Because of the Respondent's lack of diligence, Ms. Jones lost her cause of action against Dr. Rebek. In the worker's compensation case, the Respondent's lack of diligence resulted in a significant delay in the prosecution of the matter. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Chandler and Ms. Jones, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4.    KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

*Id.* In the Chandler matter, the Respondent failed to remain in contact with Mr. Chandler. Additionally, when the Respondent did communicate with Mr. Chandler, he provided false and misleading information. The Respondent also failed to adequately communicate with Ms. Jones. The Respondent's failure in this regarding caused significant delays in the worker's compensation case and the personal injury case. The Hearing Panel concludes that the Respondent failed to provide adequate communication with Mr. Chandler and Ms. Jones, in violation of KRPC 1.4(a).

"5.    KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

*Id.* Apparently the Respondent terminated his representation of Ms. Jones, without notification. However, at the time the Respondent ceased his representation of Ms. Jones, the Respondent failed to 'take steps to the extent reasonably practicable to protect' Ms. Jones. The Hearing Panel concludes that, accordingly, the Respondent violated KRPC 1.16(d).

"6. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. *Id.* In this case, the Respondent failed to expedite the worker's compensation case and the personal injury case in behalf of Ms. Jones. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"7. KRPC 8.4 provides, in pertinent part, as follows:

'It is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

. . .

(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

*Id.* The Respondent violated KRPC 8.4(a), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g), as detailed below:

"a. The Respondent violated KRPC 8.4(a) by violating KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g).

"b. The Respondent repeatedly provided false and misleading information to Mr. Chandler and Ms. Jones. The Respondent informed Mr. Chandler that he had obtained a favorable judgment when he had not filed the case. The Respondent told Ms. Jones that he was able to settle her personal injury case against Dr. Rebek for $75,000.00, when he had failed to achieve service of process on Dr. Rebek. Accordingly, the Hearing Panel concludes that by repeatedly providing false information to Mr. Chandler and Ms. Jones, the Respondent 'engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation,' in violation of KRPC 8.4(c).

"c. The Respondent engaged in conduct that was 'prejudicial to the administration of justice,' when he failed to file Mr. Chandler's case, when he failed to obtain service in Ms. Jones' personal injury, case and when he failed to prosecute Ms. Jones' worker's compensation case. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"d. Repeatedly providing false information to clients regarding the representation, adversely reflects on the Respondent's ability to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g)."

## The panel made the following recommendation as to discipline:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or

actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide honest, diligent, and competent representation, his duty to the legal system to expedite litigation, and his duty to the legal profession to maintain personal integrity and honesty.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. Mr. Chandler, Ms. Jones, and Ms. Martinez suffered actual injury as a result of the Respondent's misconduct.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. On January 9, 2001, the Respondent was informally admonished for violating KRPC 1.4(a).

"Pattern of Misconduct. The Respondent engaged in a pattern of misconduct when he repeatedly provided false information regarding the status of the representations and when he repeatedly failed to provide competent and diligent representation.

"Multiple Offenses. By violating KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 8.4(a), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g), the Respondent engaged in multiple offenses.

"Vulnerability of Victim. Mr. Chandler, Ms. Jones, and Ms. Martinez were vulnerable victims. Each of the complainants relied upon the Respondent to be honest and to provide diligent representation. Because the Respondent provided Mr. Chandler and Ms. Jones with false information regarding the status of their cases, the Respondent exacerbated their vulnerability.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Present and Past Attitude of Cooperation. During the hearing on this matter, the Respondent fully admitted his misconduct.

"Inexperience in the Practice of Law. The Respondent was admitted to the practice of law in Oklahoma in 1988, and in Kansas in 1991. During his career, the Respondent worked for the State of Kansas, Department of Social and Rehabilitation Services in child support enforcement for a number of years. The Respondent was inexperienced in the private practice of law.

"The Hearing Panel received four letters from friends and clients written in support of the Respondent. The Hearing Panel has reviewed the letters and concludes that the letters fail to establish 'good character and reputation in the community.'

"The Respondent also forwarded letters of apology to each of the complainants, and a refund of $150.00 to Mr. Chandler, during the week preceding the hearing.

Standard 9.4 and its commentary addresses this type of restitution and expression of remorse:

'9.4 Factors Which Are Neither Aggravating nor Mitigating

'The following factors should not be considered as either aggravating or mitigating:

(a)   forced or compelled restitution;

. . . .

'*Commentary*

'While courts have considered each of these factors, the purposes of lawyer discipline are best served by viewing them as irrelevant to the imposition of a sanction. Lawyers who make restitution voluntarily and on their own initiative demonstrate both a recognition of their ethical violation and their responsibility to the injured client or other party. Such conduct should be considered as mitigation (see Standard 8.32), even if the restitution is made in response to a complaint filed with the disciplinary agency. **Lawyers who make restitution only after a disciplinary proceeding has been instituted against them, however, cannot be regarded as acting out of a sense of responsibility for their misconduct, but, instead, as attempting to circumvent the operation of the disciplinary system. Such conduct should not be considered in mitigation.'**

*Id.* (emphasis added; citations omitted).

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.42. That standard provides as follows:

'Suspension is generally appropriate when:

(a)   a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b)   a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c)   a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.'

*Id.*

"After careful consideration of the findings of fact, conclusions of law, and standards, the Hearing Panel unanimously recommends that Respondent be suspended from the practice of law in the state of Kansas for a period of one year. The Hearing Panel further recommends that the Respondent be required to undergo a reinstatement hearing. *See* Kan. Sup. Ct. R. 219. At the reinstatement hearing, the Respondent should be required to establish that he has received the appropriate professional help to enable him to prevent a repeat of the misconduct present in this case, and to evidence a commitment to the orderly practice of law."

Swisher indicated that he did not wish to file any exceptions to the hearing panel report. We find the panel's findings of fact are supported by clear and convincing evidence. However, we disagree

with the recommendations of the panel regarding sanctions. This court is not bound by the panel's recommendations, which are only advisory, and may impose sanctions greater or lesser than those recommended. Pursuant to Rule 212(f) (2001 Kan. Ct. R. Annot. 263), this court has a duty to examine all the evidence in disciplinary proceedings and determine the judgment to be entered. *In re Bailey*, 268 Kan. 63, 64, 986 P.2d 1077 (1999).

IT IS THEREFORE ORDERED that the respondent, George W. Swisher, be and he is hereby disciplined by a 2-year suspension from the practice of law in accordance with Supreme Court Rule 203(a)(2) (2001 Kan. Ct. R. Annot. 224) for his violations of the KRPC. Swisher shall be required to undergo a reinstatement hearing pursuant to Supreme Court Rule 219 (2001 Kan. Ct. R. Annot. 285), at which he will be required to establish that he has received appropriate professional help to enable him to prevent further misconduct, establish his ability to obtain legal malpractice insurance, and evidence a commitment to the orderly practice of law.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to the respondent.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.