No. 91,077

In the Matter of E. THOMAS PYLE, III, *Respondent.*

(91 P.3d 1222)

Opinion filed June 25, 2004.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*E. Thomas Pyle, III*, respondent, argued the cause pro se.

*Per Curiam*: This is a contested proceeding in discipline filed by the Disciplinary Administrator against E. Thomas Pyle, III, an attorney licensed to the practice of law in Kansas. A hearing panel of the Kansas Board for the Discipline of Attorneys determined that respondent E. Thomas Pyle, III, violated Kansas Rule of Professional Conduct (KRPC) 4.2 (2003 Kan. Ct. R. Annot. 442) (communication with person represented by counsel); KRPC 4.4 (2003 Kan. Ct. R. Annot. 444) (respect for rights of third parties); KRPC 8.3(a) (2003 Kan. Ct. R. Annot. 463) (reporting professional misconduct); and KRPC 8.4 (d) and (g) (2003 Kan. Ct. R. Annot. 464) (misconduct). Pyle argues that the panel's findings were not supported by the evidence and that the proposed discipline of public censure is inappropriate.

We adopt and affirm the hearing panel's findings and hereby order public censure of respondent.

The hearing panel's findings of fact are summarized as follows:

Pyle practices law in McPherson, Kansas. Sallie Moline was Pyle's client in a personal injury case against Ricci Gutzman. Moline was romantically involved with Gutzman.

On August 2, 1999, Moline tripped over a dog cable in Gutzman's driveway, injuring her knee. Moline contacted Pyle regarding her injury, and Pyle agreed to represent her in an action against Gutzman. Before filing a lawsuit, Pyle helped to prepare an affidavit for Gutzman to sign. The affidavit stated:

"1. I am Ricci Gutzman . . . .

"2. I am the defendant in a lawsuit filed by Sallie L. Moline . . . .

"3. On August 2, 1999, Sallie injured her left leg and knee at my residence . . . .

"4. Sallie injured her left leg and knee after tripped [*sic*] over a dog cable that was wrapped around a basketball goal and stretched out over the driveway. Sallie was walking to my car early in the morning and during the rain when she tripped over the dog cable and injured her left leg and knee.

"5. I normally and routinely removed the dog cable from the driveway every evening. However, the night before the accident, I neglected and failed to remove the dog cable from the driveway and Sallie was unaware of this failure.

"6. It is my understanding that Sallie has sustained permanent injuries to her left leg and knee, has incurred medical expenses, and has lost wages as a result of this accident.

"7. I take full responsibility for the accident and admit that I am responsible for Sallie's injuries.

"8. I have homeowner's insurance with American Family, which includes personal liability coverage. I direct my insurance company to admit liability in this claim and to make every possible effort to settle the claim for a reasonable and fair amount."

After Gutzman signed the affidavit, Pyle filed Moline's lawsuit against Gutzman.

American Family Insurance, Gutzman's homeowner's insurer, hired John D. Conderman to represent Gutzman in the lawsuit. Conderman filed an answer to Moline's petition, denying liability. After receiving the answer, Pyle wrote a letter to Conderman, which contained the following language:

"I have received your answer, request for Rule 118 statement, and defendant's interrogatories to plaintiff. I will forward the same to my client.

"However, please be advised that we have two options at this point. One, we can settle the case. Two, I can file a motion for sanctions pursuant to K.S.A. 60-211, a motion for partial summary judgment, and other legal and administrative pleadings.

"In regard to option one, the defendant (*i.e.* your client, not the insurance company) has admitted all liability in the claim and has taken full responsibility for the accident and injuries. Enclosed for your review is a copy of an affidavit from the defendant.

"It is my understanding that you were aware of this affidavit prior to filing the frivolous answer and interrogatories. In light of the defendant's admission and your awareness of the admission, your answer and interrogatories are frivolous and subject to immediate sanctions pursuant to K.S.A. 60-211.

"You represent the defendant, not the insurance company. The defendant has admitted liability and taken full responsibility for his actions and omissions. You are his advocate and when you filed the answer, you were not advocating his position, but instead were advocating the insurance company's position and interests. Not only do I find this behavior frivolous, but I also find it unethical.

"The defendant is insured by American Family. The defendant and American Family entered in a contract. Each party to that contract made certain promises.

"Among the promises, the defendant promised to pay his premiums and cooperate with the insurance company in the event that a claim was filed. Just because a defendant admits responsibility and liability does not mean that he is not cooperating with his insurance company. Cooperating does not mean that the defendant has to ignore the truth. The defendant has kept his promises, however, the insurance company has not.

"Among the promises, the insurance company agreed to provide insurance coverage to the defendant and to provide the defendant with a defense in the event that a lawsuit was filed against [sic]. A defense includes an attorney who represents the defendant, insured, and not the insurance company. If the defendant's and insurance company's interests are in conflict, then the insurance company needs to hire an independent lawyer to represent the defendant and then their own lawyer to represent their interests. A truly independent lawyer listens to his or her client and advocates their positions [sic] — not the insurance company's position.

"It is completely unacceptable and unethical for an attorney to represent an individual, ignore that individual's admissions, and then advocate the insurance company's position. John, you know better than that. (I note in your advertisement in the Kansas Legal Directory that you are on the Kansas Board for Discipline of Attorneys from 1996 to present. You really should know better!) There is no excuse for your behavior. Just because the insurance company is paying your attorney fees does not give you the right to deny liability and contest an admitted case. Just because you file a denial of liability in 100% of the cases you defend also does not give you that right. In fact, an attorney who states that he files a denial of liability in 100% of the cases he defends, has made an outright admission that he has filed frivolous pleadings.

"John, as an advocate for my client, I have a duty to represent my client zealously and maximize her recovery. I also have a duty to the Kansas courts, Kansas Supreme Court, Kansas attorneys, and the Kansas Rules of Professional Conduct. Your behavior (i.e. ignoring the defendant's admissions, advocating the insurance company's positions, and filing frivolous pleadings) has violated Rules 3.1, Meritorious Claims and Contentions, 3.2, Expediting Litigation, 3.3, Candor Toward the Tribunal, and 3.4, Fairness to Opposing Party and Counsel.

"In light of your behavior and the insurance company's position, I have been given the authority to accept a settlement offer for the policy limits of $300,000.00. Please forward this offer to both the defendant and the insurance company and then let me know if it is acceptable. However, please be advised that if we do not

settle this matter and reach a negotiated resolution of this case within the next twenty (20) days, then I will take the following action:

1. File a motion for sanctions, including but not limited to attorney fees, interest, and penalties for the filing of the frivolous answer and interrogatories.
2. File a motion for partial summary judgment on the issue of liability;
3. Turn the facts of the case over to the Disciplinary Administrator;
4. Recommend to the defendant, through a letter to you, that he find another attorney that will represent his interests and not the insurance company's interests, recommend that he sue his current attorney and his insurance company, recommend that he file an ethics complaint against you with the Disciplinary Administrator, and recommend that he file a complaint against his insurance company with the Kansas Insurance Commissioner;
5. Consider filing a motion to disqualify you from representing the defendant because of your frivolous pleadings and desires to protect the insurance company instead of the defendant; and
6. File Requests for Admission regarding the issue of liability, the petition, and the defendant's affidavit.

"I take no pleasure in writing this letter or making the statements that I am making. However, because you have ignored your client's affidavit and admissions, I have no other alternative than to put you on notice of my intentions. You can remedy the wrong by either settling the case or more importantly, by filing an amended petition admitting liability and then restricting the scope of your discovery to the issue of damages. If you would do at least the latter of the two, I would be willing to waive any attorney fees and costs incurred in responding to the frivolous pleadings and discovery.

"So that you can evaluate our settlement offer, enclosed for your review are copies for the following records:

1. List of Medical Expenses;
2. Statement from Ricci L. Gutzman;
3. August 8, 2001, report from Dr. Harbin; and
4. Medical records from Memorial Hospital of Abilene, Salina Physical Therapy, Salina Regional Health Center, Salina Sports Medicine & Orthopedic Clinic, Salina Surgical Hospital, and Anesthesia Associates of Central, Kansas.

"As I indicated, our offer of settlement is open for twenty (20) days. If we do not resolve this matter or if I do not hear back from you, I will proceed as outlined above. Please forward my letter to both the defendant and the insurance company. Thank you for your immediate attention to this most serious matter."

After Conderman received this letter, Moline called Pyle and relayed statements made by Gutzman. In response, Pyle prepared a second affidavit, which he had Moline deliver to Gutzman with-

out Conderman's permission. Gutzman signed the affidavit and Moline returned it to Pyle. This second affidavit stated:

"1.  I am Ricci Gutzman . . . .
"2.  I am the defendant in a lawsuit filed by Sallie L. Moline . . . .
"3.  On the 12th day of September, 2001, I had a conference with my attorney, John D. Conderman.
"4.  Mr Conderman explained to me that had two choices. One, I could cooperate with the insurance company. Two, the insurance company could file a lawsuit against me and drop all of my insurance coverage.
"5.  I am cooperating with the insurance company. I have given them copies of all of the legal papers filed against me, I have given them a factual history of the accident, and I have made myself available for conference. Just because I have admitted liability and responsibility for the accident, does not mean that I am not cooperating with the insurance company. The insurance company should not be able to hold me hostage to the truth just so that they do not have to pay a legitimate claim.
"6.  I do not believe that Mr. Conderman is representing my interests. I do believe that Mr. Conderman is looking out for the insurance company's interests instead of my own interests. I am disgusted by Mr. Conderman's behavior and I do not want him to represent me."

It was delivered to Moline by Pyle with a cover letter stating the following:

"This letter follows your telephone call last night and my telephone call to you this morning. Enclosed please find a proposed affidavit to be signed by Mr. Gutzman. As a party to the case, you have the right to communicate with Mr. Gutzman. Therefore, *please talk with him* and see if he will sign the enclosed affidavit. The affidavit will help us with your claim and will help him tremendously to defeat any claim by the insurance company and to document his potential claim against his attorney and his insurance company." (Emphasis added.)

Pyle then wrote a second letter to Conderman. A portion of that letter stated:

"[P]lease be advised that any reporting to the Disciplinary Administrator is not connected to any settlement offer or negotiation in this case. Instead of proceeding with an ethics complaint and a motion for sanctions pursuant to K.S.A. 60-211, I would have preferred that you would [*sic*] amend your petition and discovery requests so that we could litigate the issue of damages."

Conderman sent a copy of Pyle's first letter and copies of the petition and answer to the Disciplinary Administrator's office and withdrew as Gutzman's counsel, claiming Pyle's behavior had un-

dermined his relationship with his client. Pyle has argued in this proceeding that the relationship between Gutzman and Conderman was undermined by Conderman's words to Gutzman, not by Pyle's behavior.

The disciplinary panel in this matter discerned no violation of the Kansas Rules of Professional Conduct by Conderman.

Pyle .has contended that his first letter to Conderman was not intended as a threat. He also says in his exceptions to the panel's final hearing report that he wrote this letter in response to information relayed to him by Moline. Gutzman allegedly told Moline that Conderman had said he represented Gutzman's insurer rather than Gutzman and that Conderman denied liability in 100 percent of his cases regardless of the facts.

Pyle admits the letter was unprofessional but minimizes his conduct by saying that he sent the letter to Conderman in the "heat of battle." Pyle's exceptions attach a draft of a letter he claims was preferable. At his hearing, Pyle agreed that he should not have sent the first letter to Conderman and testified that it "adversely reflect[ed] on his fitness to practice law." He stated that he would not send similar letters in the future and that he would not "use his client to obtain an affidavit from an opposing party represented by counsel."

Pyle argues that he did not communicate with Gutzman when he prepared the second affidavit. He maintains he told Moline that he could not communicate with Gutzman but that she could, and he asserts he prepared the second affidavit at her direction.

In addition to finding that Pyle violated KRPC 4.2, 8.3(a), and 8.4(g), as alleged in the formal complaint, the panel considered whether Pyle violated KRPC 4.3 (2003 Kan. Ct. R. Annot. 443), dealing with an unrepresented person, and 8.4(a), violating the rules through the acts of another. The panel found neither violation. The panel also considered whether Pyle violated KRPC 4.4 regarding respect for the rights of third persons and KRPC 8.4(d) regarding misconduct, by threatening to report Conderman to the Disciplinary Administrator's office to gain an advantage in the lawsuit. The panel found violations of these rules.

The panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991) and unanimously recommended that Pyle be publicly censured by this court. The panel also recommended that Pyle attend and successfully complete 4 additional hours of professional responsibility continuing legal education each year for the next 3 years, in addition to the 12 hours required by the rules.

### Analysis

In disciplinary proceedings, "this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence." *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003).

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.] When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. Therefore, we do not reweigh the evidence or pass on credibility of witnesses." *Lober*, 276 Kan. at 636-37.

### KRPC 4.2

The hearing panel found that Pyle violated KRPC 4.2 by preparing the second affidavit and having Moline deliver it to Gutzman for his signature.

KRPC 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

The panel considered whether Gutzman also violated KRPC 8.4(a) but concluded that 8.4(a) was incorporated in 4.2. Because of this, the panel reasoned that finding Pyle also in violation of

8.4(a) would not serve any useful purpose. KRPC 8.4(a) states: "It is professional misconduct . . . to: [v]iolate . . . the rules of professional conduct . . . through the acts of another." The panel relied on American Bar Association Formal Opinion 95-396 and this court's decision in *In re Marietta*, 223 Kan. 11, 569 P.2d 921 (1977).

American Bar Association Formal Opinion 95-396 states:

"A lawyer may not direct an investigative agent to communicate with a represented person in circumstances where the lawyer herself would be prohibited from doing so. Whether in a civil or criminal matter, if the investigator acts as the lawyer's 'alter ego,' the lawyer is ethically responsible for the investigator's conduct."

In *Marietta*, an attorney prepared a release of liability for back child support for his client to have the client's ex-wife sign; she had representation. The rule in effect at that time, DR 7-104A(1) of the Code of Professional Responsibility, 214 Kan. lxxxvviii, stated: "During the course of his representation of a client a lawyer shall not: (1) Communicate *or cause another to communicate* on the subject of the representation with a party he knows to be represented by a lawyer in that matter . . . ." (Emphasis added.) Marietta argued that he was not the *cause* of the communication; instead, he was merely a scrivener following his client's orders. This court held that Marietta violated DR 7-104A(1) by "preparing said release, . . . knowing its significance and its intended use, [and] caus[ing] his client to communicate with his ex-wife without the consent of his ex-wife's attorney." *Marietta*, 223 Kan. 11.

In the present case, the hearing panel found "that even though KRPC 4.2 does not contain the language 'or cause another to communicate,' . . . attorneys are prohibited from using another, including a client, to do that which the attorney could not do himself."

The United States District Court for the District of Kansas has interpreted KRPC 4.2 similarly. In *Holdren v. General Motors Corp.*, 13 F. Supp. 2d 1192 (D. Kan. 1998), Holdren, an employee of General Motors (GM), spoke with his attorney about getting statements from GM employees, including management. Holdren's attorney advised him on obtaining affidavits from the other

employees, informing Holdren of the admissibility of out-of-court statements versus "signed sworn statements." The attorney then showed Holdren how to draft an affidavit. GM requested a protective order against Holdren's attempts to get affidavits from employees. GM "concede[d] that the parties . . . are not prohibited from communicating directly with each other" but argued that Holdren's counsel violated KRPC 4.2. 13 F. Supp. 2d at 1193. The court noted that the facts "present[ed] a close case" but granted GM's protective order because Holdren's counsel "circumvented Rule 4.2 through the actions of his client." 13 F. Supp. 2d at 1193.

The *Holdren* court reviewed decisions addressing whether attorneys violated KRPC 4.2 by "causing" their clients to act. *Holdren*, 13 F. Supp. 2d at 1194-95 (citing *Marietta*, 223 Kan. 11; ABA Formal Opinion 95-396). The court found that Holdren's counsel, "while attempting to walk the appropriate line ever so delicately, ha[d] simply stepped over that line" by encouraging Holdren to obtain affidavits from GM employees, and "facilitat[ing Holdren's] actions by advising him how to draft an affidavit," albeit at Holdren's request. *Holdren*, 13 F. Supp. 2d at 1195-96. *Holdren* held that because KRPC 8.4(a) prohibits violations of the professional code "through the acts of another," plaintiff's counsel was in violation of KRPC 4.2 when he encouraged his client to contact certain GM employees. An attorney "may not circumvent Rule 4.2 by directing his client to contact [those] employees." *Holdren*, 13 F. Supp. 2d at 1194.

Pyle relies on the Comment to KRPC 4.2, which states "parties to a matter may communicate directly with each other." He claims that an attorney's client is not an "agent of a lawyer — instead an agent of a lawyer would be an employee [or an] independent contractor . . . . A client is not the alter ego of the lawyer." Pyle is correct in stating that KRPC 4.2 does not restrict communication between the parties; and, in certain cases, communication between the parties should be encouraged.

Under the facts of this case, however, the hearing panel's conclusion that Pyle violated KRPC 4.2 was supported by clear and convincing evidence. Pyle's claim that he did not cause the affidavit to be delivered to Gutzman is very similar to Marietta's argument.

Even though DR 7-104A(1), the rule relied on by this court in *Marietta*, has changed, the analysis of its restrictions on lawyers' behavior still has vitality. See *Holdren*, 13 F. Supp. 2d 1192. Pyle prepared an affidavit for Gutzman concerning the very nature of the case, albeit at his client's request, and encouraged Moline to deliver it to Gutzman, who was represented by counsel. Pyle knew Moline would obtain Gutzman's signature on the affidavit without opposing counsel's consent. Pyle, through his client, communicated with Gutzman about the subject of the case without Conderman's approval. Pyle circumvented the constraints of KRPC 4.2 by encouraging his client to do that which he could not.

KRPC 8.3(a)

The hearing panel found that Pyle violated KRPC 8.3(a) by not reporting what Pyle believed to be attorney misconduct on Conderman's part.

KRPC 8.3(a) states: "A lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules *shall* inform the appropriate professional authority." (Emphasis added.)

Pyle argues that the word "substantial" found in the comments to the rule should be read into KRPC 8.3(a), requiring there to be knowledge of "substantial misconduct" before a duty to report arises. He also claims that reporting Conderman's alleged misconduct would have required publicizing confidential information, protected by KRPC 1.6 (2003 Kan. Ct. R. Annot. 368), and that he did eventually report the matter in a timely fashion.

Pyle's argument that the word "substantial" should be read into the rule is without merit. The language of the rule requires a lawyer to report "*any* . . . conduct" which the lawyer thinks is misconduct. The language of the rule is clear. Further, in Pyle's brief he stated that at the time he wrote the first letter to Conderman, he believed Conderman's conduct to be substantial misconduct.

Moreover, Pyle believed Conderman committed misconduct by filing an answer and interrogatories frivolously. The evidence to support that belief was contained in the filings, not in the confidential communications between Pyle and Moline. The filings in-

cluded Gutzman's first affidavit admitting liability and Conderman's answer and interrogatories. Pyle would not have violated KRPC 1.6 by reporting Conderman's supposed frivolous filings.

Pyle simply states that he reported Conderman's misconduct in a timely fashion without pointing out his report in the record. Further, at his hearing, Pyle testified that he never filed a KRPC 8.3 complaint against Conderman. Pyle argues that the requirements of KRPC 8.3 were met when he responded to Disciplinary Administrator Stan Hazlett's letter regarding his own conduct, which referred to Conderman's behavior. Pyle's response to a letter questioning his own misconduct is not an independent report of another attorney's misconduct. He never met the requirements of KRPC 8.3 after forming an opinion that Conderman had committed an ethical violation. It is apparent from the clear and convincing evidence before the panel that Pyle believed that Conderman had committed misconduct but did not report it, choosing instead to write a letter threatening Conderman to gain settlement advantage. KRPC 8.3(a) was violated.

### KRPC 8.4(g)

Pyle admits to violating KRPC 8.4(g).

### KRPC 4.4 AND KRPC 8.4(d)

The Formal Complaint did not contain allegations that Pyle violated KRPC 4.4 (2003 Kan. Ct. R. Annot. 444) or 8.4(d). Nevertheless, the hearing panel found that Pyle violated these rules by writing the first letter to Conderman and by threatening to file a complaint with the Disciplinary Administrator's office.

KRPC 4.4 states: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal right of such a person."

KRPC 8.4(d) states: "It is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice."

At the formal hearing, a member of the panel questioned Pyle regarding his intent in sending the letter: "Right, it was [the] threat

that you would file a complaint unless he admitted liability, correct?" Pyle answered: "That's the way it reads." The member further questioned Pyle: "[L]ook at your language. . . . 'If we do not settle this . . . within the next 20 days, I will take the following action: . . . turn the facts of the case over to the Disciplinary Administrator.' That's a threat that if it's not settled you're going to turn it in, right?" Pyle answered: "That's what the letter says."

The panel described Pyle's demeanor as "Clintonesque" in answering this line of questioning; Pyle's answers "did not meet straight on the substance of the questions." The panel concluded that Pyle wrote the letter merely to threaten Conderman with the sole purpose "of attempting to frighten or to put pressure on opposing counsel to settle the lawsuit upon the terms dictated and desired by [Pyle]." In a footnote to the final hearing report, the panel opined that Pyle also may have committed blackmail, pursuant to K.S.A. 21-3428. The panel's conclusion on Pyle's motives is adequately supported by the evidence and the panel's judgment on his credibility. See *In re Lober*, 276 Kan. at 637.

The first letter written to Conderman indicated that Conderman had two choices: He could either settle the lawsuit or have a motion for sanctions and a disciplinary action filed against him. Pyle asserted that by filing an answer to the lawsuit, Conderman was in violation of KRPC 3.1 (2003 Kan. Ct. R. Annot. 418), 3.2 (2003 Kan. Ct. R. Annot. 420), 3.3 (2003 Kan. Ct. R. Annot. 424), and 3.4 (2003 Kan. Ct. R. Annot. 429). Pyle later admitted that this letter was unprofessional and should never have been sent. This admission is tantamount to acknowledging that the letter was used as a tool to gain a better bargaining position in the lawsuit. In our view, there was clear and convincing evidence that Pyle sent a letter that had "no substantial purpose other than to embarrass, delay, or burden" Conderman. KRPC 4.4. His conduct was obviously prejudicial to the administration of justice.

Pyle also challenges the procedure followed by the panel regarding these two violations. Under certain circumstances, rules not cited in the formal complaint may be considered by the hearing panel. *In re Swisher*, 273 Kan. 143, 148, 41 P.3d 847 (2002); *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984). "Due process re-

quires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the State is not required to plead specific rules, since it is the factual allegations against which the attorney must defend." *Caenen*, 235 Kan. at 458. *Caenan* held: "Where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom." *Caenan*, 235 Kan. 451, Syl. ¶ 3.

Pyle contends that he was not given adequate notice that he would be accused of violating KRPC 4.4 and 8.4(d). We disagree.

The facts set out in the formal complaint included excerpts from Pyle's first letter to Conderman and stated that Pyle used the threat of reporting Conderman's alleged misconduct to the Disciplinary Attorney's office "as leverage to force Mr. Conderman to settle the lawsuit. The said conduct of the Respondent is prejudicial to administration of justice and adversely reflects on the Respondent's fitness to practice law." Pyle received adequate notice that Rules 4.4 and 8.4(a) were implicated by his actions.

### *Discipline*

" 'To determine the appropriate discipline we must evaluate the nature of the duty violated, the attorney's mental state, the potential or actual injury caused by the misconduct, and the existence of aggravating or mitigating factors. . . . The discipline must be based on the specific facts and circumstances of each case, so other disciplinary actions provide little guidance. [Citation omitted.] Historically, we have applied the ABA Standards for Imposing Lawyers Sanctions as a guide for determining the appropriate discipline.' " *In re Lober*, 276 Kan. at 640 (citing *In re Rumsey*, 276 Kan. 65, 78, 71 P.3d 1150 [2003]).

The hearing panel unanimously recommended that Pyle be publicly censured by this court and that he attend and successfully complete 4 hours of professional responsibility continuing legal education, in addition to the 12 hours required by the rules, each year for the next 3 years.

We are not bound by the panel's proposed discipline. Rule 212(f) (2003 Kan. Ct. R. Annot. 270); *In re Bailey*, 268 Kan. 63, 64, 986 P.2d 1077 (1999).

Pursuant to ABA Standard 3, the panel considered the following factors:

"*Duty Violated.* The Respondent violated his duty to the profession to maintain personal integrity.

"*Mental State.* The Respondent negligently violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the attorney/client relationship between Mr. Conderman and Mr. Gutzman.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no aggravating or mitigating factors present."

The panel also considered the following ABA Standards:

Standard 6.33: "Reprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding."

Standard 7.3: "Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

Pyle requests that this court consider informal admonition or private censure because he "engaged in an isolated instance of negligence and caused little or no actual or potential injury to a party, or caused little or no actual or potential interference with the outcome of a legal proceeding."

After consideration of the facts in this case and the appropriate ABA Standards, we accept the panel's recommendation of published censure.

IT IS THEREFORE ORDERED that the respondent, E. Thomas Pyle, III, be censured in accordance with Supreme Court Rule 203(a)(3) (2003 Kan. Ct. R. Annot. 226) for the violations found herein.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.