No. 105,340

In the Matter of KEVIN C. HARRIS, *Respondent*.

(257 P.3d 1231)

Opinion filed July 22, 2011.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Kevin C. Harris*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Kevin C. Harris, of Kansas City, an attorney admitted to the practice of law in Kansas in 1985.

On June 4, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The Disciplinary Administrator then filed an amended complaint on July 26, 2010. Respondent answered the amended complaint on September 9, 2010. A panel of the Kansas Board for Discipline of Attorneys conducted a hearing on the complaint on September 10, 2010, at which the respondent was personally present. The hearing panel determined that respondent violated Kansas Supreme Court Rules 207(b) (2010 Kan. Ct. R. Annot. 308) (failure to cooperate in disciplinary investigation), 208(c) (2010 Kan. Ct. R. Annot. 320) (failure to notify Clerk of the Appellate Courts of change of address), 211(b) (2010 Kan. Ct. R. Annot. 327) (failure to file timely answer in disciplinary proceeding), and 218(a) (2010 Kan. Ct. R. Annot. 370) (failure to notify clients upon suspension). At the conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2.    On December 10, 2007, Washington Mutual Bank (the 'Bank') filed suit against Marvin M. Pottratz, deceased, *et al.*, Case No. 07CV9785 in the District

Court of Johnson County, Kansas. The nature of the case was a mortgage foreclosure.

"3.    Dale Angle Wesselman is an overtheroad truck driver who had entered into an installment sale contract to purchase the property from Mr. Pottratz. The contract predated the mortgage but was never recorded. Mr. Wesselman completed all obligations under the installment sale contract; however, the property was never deeded to him and no indication of the sale appeared of record.

"4.    The Bank joined Mr. Wesselman into the lawsuit on February 5, 2008, and obtained service on him on that same date.

"5.    The Respondent had previously represented Mr. Wesselman on a landlord/tenant case and agreed to represent Mr. Wesselman in this matter. The understanding between the parties was that the Respondent would represent Mr. Wesselman to protect against a default judgment but was going to seek other counsel who would either assist the Respondent or enter their appearance because the Respondent did not do mortgage foreclosures.

"6.    Mr. Wesselman gave the Respondent all of the documentation Mr. Wesselman had regarding the property and transactions with Pottratz at the time the Respondent was hired. This included 'contracts on the deed' and evidence of payments. Mr. Wesselman stated that this included 'every piece of paper that I had to deal with my

house, the Courts, anything to do with Marvin Pottratz against me on that property. I turned over my whole pile to him.'

"7.    The official docket sheet of the Johnson County District Court . . . indicates the following somewhat inconsistent entries which are listed by filestamp date:

| | |
|---|---|
| 02252008 | Entry of Appearance (Kevin C. Harris) |
| 02252008 | Clerks Extension of Time (For Dale Wesselman & Betty Wesselman) |
| 03052008 | Stipulation of Dismissal with Prejudice |
| 03052008 | Changed Case Status: From: Pending To: Case Terminated (Dismissed) |
| 03072008 | Motion to Extend Time to Answer (Wesselmans) [Filed by Harris] |
| 03102008 | Order of Dismissal Without Prejudice |
| 05282008 | Changed Case Status: From: Reopened To: Case Terminated (Default Judgment) |
| 06092008 | Journal Entry of Judgment, for Pl. |
| 06262008 | Order of Sale |

"8.    On June 27, 2008, the Kansas Supreme Court issued an order suspending the Respondent's license to practice law for a period of two years. *In re Harris*, 286 Kan. 532, 186 P.3d 737 (2008). Within days of his suspension, the Respondent moved out of his office on State Avenue. The Respondent testified that he told Mr. Wesselman four or five days after the order of suspension was published that he had been suspended and that he told him this again when they met on July 8,

2008. Mr. Wesselman testified that he first learned of the Respondent's suspension when he found out his house was up for sale and went to the courthouse to investigate.

"9. The Respondent testified that following the Order of Dismissal Without Prejudice he received nothing from the Court, other counsel, or Mr. Wesselman about this matter until Mr. Wesselman called him on the Wednesday or Thursday before July 8, 2008, to tell him the property had been sold at a Sheriff's sale. During the call they agreed to meet on July 8, 2008. The Disciplinary Administrator offered nothing contrary to the Respondent's testimony and presented no evidence that the Respondent was or should have been aware that the case status was other than dismissed prior to Mr. Wesselman's call.

"10. On July 8, 2008, the Respondent and Mr. Wesselman met at a bank in Kansas. There, the Respondent provided Mr. Wesselman with a letter informing him that he was unable to continue to represent him. This was the first written notice Mr. Wesselman received of the Respondent's suspension. The Respondent informed Mr. Wesselman that Kent O. Docking was taking over his cases, including Mr. Wesselman's case. The Respondent presented Mr. Wesselman with an 'Affidavit of Equitable Interest' that Harris had prepared in Mr. Docking's office. The Respondent directed Mr. Wesselman to review and sign the affidavit before a notary public. The affidavit was later filed with the court along with a 'Motion to Set Aside Jugement [sic], Stay Sale of Property and File Answer *Instanter*.'

"11. Thereafter, Mr. Wesselman met with Mr. Docking and paid Mr. Docking an attorney fee to represent him. Mr. Docking entered his appearance in behalf of Mr. Wesselman.

"12. The Respondent testified that after Mr. Wesselman agreed to hire Mr. Docking on July 8, 2008, or July 9, 200[8], he returned some papers to Mr. Wesselman and delivered the balance of the file to Mr. Docking.

"13. In May 2009, the Kansas Supreme Court disbarred Mr. Docking.

"14. In June 2009, after Mr. Wesselman learned that he was being evicted from his property, he went to see the Honorable James F. Vano, the judge presiding over the case. Mr. Wesselman told Judge Vano that the Respondent never advised him that judgment had been entered against him, nor that his home was going to be sold.

"15. The Honorable Stephen R. Tatum, the Chief Judge of the Johnson County District Court, set aside the eviction order and appointed Greg Blume to represent Mr. Wesselman. Judge Tatum included the following in his order:

'The defendant, Wesselman, has been represented in this matter by Kevin C. Harris (KS Bar No. 12515) and by Kent Docking (KS Bar No. 12265). Neither attorney filed any notice or motion for withdrawal.

'On June 27, 2008, the Kansas Supreme Court entered its decision suspending Kevin C. Harris from the practice of law for a period of two years. *In re Harris*, Case No. 99,705.

'On May 20, 2009, the Kansas Supreme Court entered its decision and disbarment order against Kent O. Docking. *In re Docking*, Bar Docket No. 12,265.

'Neither counsel appears to have taken steps to communicate with the client, Wesselman, provide his file or protect his interests in the captioned case or otherwise comply with Kansas Supreme Court Rule 218. Furthermore it appears the affairs of the client are and have been neglected in this matter.'

"16.   Judge Tatum forwarded a copy of his order to the Office of the Disciplinary Administrator. The Disciplinary Administrator docketed a complaint for investigation and the matter was assigned to the Wyandotte County Ethics and Grievance Committee for investigation. John Duma, the Chairman of the Wyandotte County Ethics and Grievance Committee assigned Sheryl Lidtke to investigate the case.

"17.   On July 25, 2009, the Respondent provided a written response to the complaint. The Respondent's response consisted of the following:

'On July 8th, I received a letter from Frank Diehl dated June 24th. The envelope was postmarked July 6, 2009. Enclosed with that letter was an enclosed copy of an *ex parte* Order from Judge Tatum.

'On June 15th I called Dale Wesselman in the morning. When he answered he said he wanted to talk to his attorney before talking to me. He called late that afternoon. In our conversation he admitted receiving the letter that I handed him notifying him that I was unable to represent him. He also acknowledged that at the time I handed him the letter he had some money from his brother to retain an attorney, which he immediately did. That attorney entered his appearance in Mr. Wesselman's case, thus ending my active interest in that matter as the record reflects.

'Further in our conversation on the 15th, Mr. Wesselman told me that if I provided money for fees and did legal work for him he said he would try to do something to help me in my legal troubles arising from Judge Tatum's Order.

'When Mr. Wesselman's new attorney called me the next morning (June 16th) I told him of that demand. I believe that he made a tape of that conversation.

'I have filed a Notice of Appeal of Judge Tatum's Order. I shall forward a copy of the Docketing Statement when it is filed.'

"18.   On September 14, 2009, Ms. Lidtke wrote to the Respondent requesting that the Respondent call to schedule an interview and that the Respondent provide her with a copy of the letter he provided to Mr. Wesselman. The Respondent did not contact Ms. Lidtke nor did he provide her with a copy of the letter that he provided to Mr. Wesselman.

"19.   On October 1, 2009, Mr. Duma wrote to the Respondent and reminded him of his obligation to cooperate in the disciplinary investigation.

"20. The Respondent attempted to docket an appeal of the court's order with the Kansas Appellate Courts. However, on December 3, 2009, the clerk's office returned the Respondent's docketing statement to him because he was not a party to the action.

"21. On December 7, 2009, Mr. Duma forwarded documents that he received from the Respondent to Ms. Lidtke. According to Mr. Duma's letter, he spoke by telephone with the Respondent on December 4, 2009. Again, Mr. Duma reminded the Respondent of his obligation to cooperate in the investigation.

"22. On December 16, 2009, Ms. Lidtke wrote to the Respondent for a second time. Ms. Lidtke reminded the Respondent of her earlier requests. The Respondent did not respond to Ms. Lidtke's December 16, 2009, letter. The Respondent never met with Ms. Lidtke pursuant to her request nor did he ever provide a copy of the letter that he provided to Mr. Wesselman on July 8, 2008.

"23. Mr. Wesselman's documents that the Respondent delivered to Mr. Docking have never been returned and cannot be located.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated Kan. Sup. Ct. R. 207, Kan. Sup. Ct. R. 208, Kan. Sup. Ct. R. 211, and Kan. Sup. Ct. R. 218, as detailed below. (Footnote: The Deputy Disciplinary Administrator also alleged that the Respondent violated KRPC 1.3, KRPC 1.4, and KRPC 1.16. However, the Deputy Disciplinary Administrator failed to present evidence to establish a violation of those rules. Accordingly, the Hearing Panel dismisses the allegations that the Respondent violated KRPC 1.3, KRPC 1.4, and KRPC 1.16.)

"2. Lawyers must cooperate in disciplinary investigations. Kan. Sup. Ct. R. 207(b) provides the requirements in this regard.

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

The Respondent knew that he was required to cooperate in the disciplinary investigation—he had been instructed to do so in writing by the Disciplinary Administrator, by Mr. Duma, and by Ms. Lidtke. Because the Respondent knowingly failed to provide a copy of the letter given to Mr. Wesselman and because the Respondent failed to submit to an interview by Ms. Lidtke, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b).

"3. Attorneys are required to notify the Clerk of the Appellate Courts of any change of address within thirty days. Kan. Sup. Ct. R. 208(c). In this case, the Respondent did not provide the Clerk of the Appellate Courts with his current address until June 28, 2010, two years after his address

changed. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 208(c).

"4. The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provide the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The Respondent filed an Answer to the Formal Complaint on September 9, 2010, the day before the hearing. The Respondent's Answer was not timely. As such, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written Answer to the Formal Complaint.

"5. Upon suspension or disbarment, attorney must take certain action. Kan. Sup. Ct. R. 218(a) provides the requirements in this regard:

'In the event any attorney licensed to practice law in Kansas shall hereafter be disbarred or suspended from the practice of law pursuant to these Rules, or shall voluntarily surrender his or her license, such attorney shall forthwith notify in writing each client or person represented by him or her in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.'

Upon suspension, the Respondent was required to notify his clients, opposing counsel, and the courts of his inability to continue the representation. The Respondent failed to 'forthwith notify in writing' Mr. Wesselman of his suspension from the practice of law. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 218(a). The Respondent also did not notify the Court or opposing counsel in Mr. Wesselman's case, but because no evidence was presented to refute the Respondent's testimony that he was unaware the case [was] reinstated following its dismissal, no violation results from this omission.

"6. While suspended, the Respondent met with Mr. Wesselman, presented to him an affidavit of equitable interest and discussed the pending matter. The Respondent testified that he did this to assist Mr. Docking. KRPC 5.5 prohibits a suspended lawyer from advising clients or assisting another lawyer by meeting directly with clients. The Respondent, by his own testimony, admitted violating this prohibition; however, this point was not raised prior to the hearing.

"7. It is appropriate to consider violations not specifically included in the Formal Complaint under certain circumstances. The law in this regard was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

'Supreme Court Rule 211(b) (232 Kan. clxvi), requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct.

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117, *reh. denied* 391 U.S. 961 (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

'Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses. . . . Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the state is not required to plead specific rules, since it is the factual allegations against which the attorney must defend. . . . However, if specific rules are pled, the state is thereafter limited to such specific offenses. . . .

'Subsequent to the *Ruffalo* decision, the due process requirements in lawyer disciplinary proceedings have been given exhaustive treatment by this court. In *State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975), 87 A.L.R. 3d 337, the court summarized prior Kansas and federal precedent on the question, including *Ruffalo*, and held in accordance with established precedent that the state need not set forth in its complaint the specific disciplinary rules allegedly violated . . ., nor is it required to plead specific allegations of misconduct. . . . What is required was simply stated therein:

' " 'We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. . . .

. . . .

' " 'It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result.' " '

235 Kan. at 458-59. Thus, only when the Formal Complaint alleges facts that would support findings of violations of additional rules, will considering additional violations be allowed. In this case, the Formal Complaint does not include sufficient facts to give a contention that the Respondent violated KRPC 5.5. The Hearing Panel concludes that it is not proper to consider a violation of KRPC 5.5.

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the legal system to comply with court rules. Additionally, the Respondent violated his duty to the legal profession to cooperate in the disciplinary investigation.

"*Mental State.* The Respondent knowingly and intentionally violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual or potential injury to his client, to the legal system, and to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* The Respondent has been previously disciplined on four occasions. Following a hearing before a Hearing Panel of the Kansas Board for Discipline of Attorneys, on April 26, 1994, the Respondent was informally admonished by the Disciplinary Administrator for failing to diligently represent his client, for failing to appear in court in behalf of his client, and for failing to forward the fine and costs to the Court in behalf of his client.

"On March 14, 1997, the Kansas Supreme Court placed the Respondent on supervised probation for two years for having engaged in misconduct. Specifically, the Respondent violated MRPC 1.15, MRPC 1.4, MRPC 1.16(a)(3), MRPC 1.16(d), and MRPC 1.5(a). *In re Harris,* 261 Kan. 1063 (1997).

"On January 28, 2002, the Disciplinary Administrator informally admonished the Respondent for failing to provide diligent representation in an appellate case.

"On June 27, 2008, the Kansas Supreme Court suspended the Respondent's license to practice law in the State of Kansas for a period of two years for having violated KRPC 3.1, KRPC 3.2, and KRPC 3.4(d).

"*Pattern of Misconduct.* The Respondent engaged in a pattern of misconduct by repeatedly ignoring requests for information from Ms. Lidtke.

"*Multiple Offenses.* The Respondent committed multiple offenses by violating Kan. Sup. Ct. R. 207, Kan. Sup. Ct. R. 208, Kan. Sup. Ct. R. 211, and Kan. Sup. Ct. R. 218.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent obstructed the disciplinary proceeding, in bad faith, by repeatedly failing to comply with the requests of Ms. Lidtke.

"*Refusal to Acknowledge Wrongful Nature of Conduct.* The Respondent has refused to acknowledge that he was required to change his registered address with the Clerk of the Kansas Supreme Court, as required by Kan. Sup. Ct. R. 208. Additionally, the Respondent also failed to take responsibility [for] the other violations.

"*Substantial Experience in the Practice of Law.* The Respondent has substantial experience in the practice of law. The Kansas Supreme Court first admitted the Respondent to the practice in 1985.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Dishonest or Selfish Motive.* The Respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"*Remoteness of Prior Offenses.* The Respondent's offenses that lead to discipline in 1994, 1997, and 2002 are remote in time and character to the instant offenses. Additionally, the Respondent's conduct that [led] to the Respondent's 2008 suspension is remote in character to the current case.

"In addition to the abovecited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'8.1 Disbarment is generally appropriate when a lawyer

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be disbarred. The Respondent took the position that he did not engage in any misconduct and that the complaint should be dismissed.

"The hearing held on September 10, 2010, was the Respondent's fourth hearing before a Hearing Panel of the Kansas Board for Discipline of Attorneys. Following each hearing, the Respondent received discipline. The Respondent's disciplinary history is significant and because he continued to violate the Kansas Rules of Professional Conduct and the Kansas Supreme Court rules after his extensive contact with the disciplinary process, disbarment is appropriate.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator.

"After the hearing on the Formal Complaint, held on September 24, 2010, the Respondent filed a Motion to Reconsider the Decision of the Hearing Panel seeking dismissal of the Hearing Panel's decision regarding a violation of Kan. Sup. Ct. R. 207 and Kan. Sup. Ct. R. 208(c). The Respondent cited and sent to the Presiding Officer an original letter and envelope that investigator Sheryl Lidtke sent to the Respondent dated September 14, 2009, on the stationery of her employer, Wyandotte District Attorney Jerome A. Gorman. This information was consistent with the evidence presented at the hearing but the motion was premature. The Respondent was so advised."

## DISCUSSION

In a disciplinary proceeding, we consider the evidence, the findings of the disciplinary panel, and the arguments of the parties and determine whether violations of the KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Here, the respondent failed to file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(d) (2010 Kan. Ct. R. Annot. 344). We conclude the hearing panel's findings are supported by clear and convincing evidence. Thus, the only issue before us is the appropriate discipline.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator reiterated its recommendation that the respondent be disbarred. The respondent argued against disbarment and suggested to the court that at most, he be suspended from the practice of law for a period of 1 year to be applied retroactively beginning July 1, 2010, the date he would have been eligible to apply for reinstatement following his 2-year suspension had he chosen to do so. *In re Harris*, 286 Kan. 532, 186 P.3d 737 (2008).

We decline the respondent's invitation to impose a lesser sanction than that recommended by the Board and the Disciplinary

Administrator. As the hearing panel noted, the respondent has had extensive contact with the disciplinary process resulting in respondent receiving (1) an informal admonishment in 1994 for failing to diligently represent his client, failing to appear in court on behalf of a client, and failing to forward a fine and costs to the court on behalf of a client; (2) supervised probation for 2 years in 1997 for having engaged in misconduct, including violations of MRPC 1.15 (1996 Kan. Ct. R. Annot. 302), 1.16(a)(3) and (d) (1996 Kan. Ct. R. Annot. 310), 1.4 (1996 Kan. Ct. R. Annot. 270), and 1.5(a) (1996 Kan. Ct. R. Annot. 276), *In re Harris,* 261 Kan. 1063, 934 P.2d 965 (1997); (3) an informal admonition in 2002 for failing to provide diligent representation in an appellate case; and (4) a 2-year suspension in 2008 for respondent's violations of KRPC 3.1 (2007 Kan. Ct. R. Annot. 500), 3.2 (2007 Kan. Ct. R. Annot. 503), and 3.4(d) (2007 Kan. Ct. R. Annot. 514), *In re Harris,* 286 Kan. 532.

When these prior disciplinary offenses are considered along with the respondent's multiple offenses in this case, including violations of Kansas Supreme Court Rules 207, 208, 211, and 218, we find disbarment is the appropriate discipline.

In so holding, we note that the Disciplinary Administrator did not challenge the panel's conclusion that it was not permitted to consider allegations that the respondent violated KRPC 5.5 (2010 Kan. Ct. R. Annot. 579) because those allegations were not included in the formal complaint. We make no findings regarding this determination by the panel but point out that the violations found by the panel are more than sufficient to justify the discipline imposed, even absent the allegations the panel declined to consider.

## Conclusion and Discipline

It Is Therefore Ordered that respondent, Kevin C. Harris, be disbarred from the practice of law in the state of Kansas, effective on filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2010 Kan. Ct. R. Annot. 276).

It Is Further Ordered that Kevin C. Harris comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.